IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDWIN GONZALES,

                                                           OPINION AND ORDER

                  Plaintiff,

                                                3:07-cv-00144-bbc

            V.

DR. BOB BREVARD, NURSE SUE WARD and
NURSE STEVE HELGERSON,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a civil action for monetary and declaratory relief brought under 42 U.S.C. §

1983.  Plaintiff Edwin Gonzales contends that defendants Robert Brevard, Sue Ward and

Steve Helgerson violated his Eighth Amendment rights when they were deliberately

indifferent to his serious dental health needs.  At all times relevant to this case, plaintiff was

a prisoner incarcerated at the Columbia Correctional Institution in Portage, Wisconsin.

       Now before the court is defendants' motion for summary judgment.  Because plaintiff

has failed to adduce sufficient evidence that defendants were deliberately indifferent to his

dental health care needs, I will grant defendants' motion for summary judgment.

Unfortunately, I had to disregard all of plaintiff's attempts to dispute certain of defendants'

proposed findings of fact because plaintiff did not follow this court's summary judgment

1

procedures.  In particular, plaintiff responded to certain facts defendants proposed by telling the court his version of what did or did not happen.  However, plaintiff's statements are not followed by citations to evidence in the record to support them.  To be treated as evidence, testimonial statements such as those plaintiff made must be set forth in an affidavit that is properly notarized or in which statements are declared to be true under penalty of perjury as 28 U.S.C. §1746 allows.  Plaintiff did not submit such an affidavit.

In some instances, plaintiff tries to dispute defendants' proposed facts by citing to exhibits attached to his complaint.  However, these "exhibits" are not evidence because they are not authenticated.  To be admissible, the documents would have to have been accompanied by an affidavit of the person who has custody of the documents stating what those documents are.

In any event, even if plaintiff had submitted a proper affidavit and authenticated exhibits, his evidence would have been insufficient to raise a question of material fact whether defendants were deliberately indifferent to his serious dental health needs.

For the purpose of deciding this motion, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Edwin Gonzales is a Wisconsin inmate incarcerated at the Columbia

2

Correctional Institution in Portage, Wisconsin.  Defendants Robert Brevard, Sue Ward and Steve Helgerson were employees of the Department of Corrections at all times relevant to this case.

Defendant Brevard received a D.D.S. from Marquette University in 1971.  He is licensed to practice dentistry in Wisconsin, and has been so licensed since 1971. Defendant Brevard has been employed by the state of Wisconsin since 1993, and is employed by the Department of Corrections as a dentist.  In this position, he has the duties and responsibilities of attending to the professional management of dental services at Department of Corrections institutions, including Columbia Correctional Institution and New Lisbon Correctional Institution.

Defendant Ward was employed by the Department of Corrections as a Nurse Clinician 2 in the Health Services Unit at Columbia Correctional Institution.  In defendant Ward's capacity as Nurse Clinician, her duties included, but were not limited to, responsibilities of patient assessment and treatment, assisting the physician in providing medical services, management of medications, provision of emergency care and maintenance of medical records.

Defendant Helgerson is employed by the Department of Corrections as a Nurse Clinician 2 in the Health Services Unit at Columbia Correctional Institution.  In defendant Helgerson's capacity as Nurse Clinician, his duties include, but are not limited to,

3

responsibilities of patient assessment and treatment, assisting the physician in providing medical services, management of medications, provision of emergency care and maintenance of medical records.

At Columbia Correctional Institution, inmates may request medical attention by submitting a Health Services Request to the Health Services Unit. If an inmate believes he needs to be seen right away, he may go to sick call. Sick call means that an inmate should be seen by nurses so that they can determine if the inmate should be seen by a doctor.

On December 22, 2005, defendant Brevard performed surgery on plaintiff to extract his #2 tooth. The tooth had root decay and was non-restorable, and the root was fractured at the decay site. Defendant Brevard performed what is known as a "flap procedure." In a flap procedure, a section of the gums is pulled back to clean the roots of the teeth and repair damaged bone, if necessary. A flap procedure is necessary when severe gum disease (periodontitis) has damaged the bones that support the teeth. If good dental care is maintained after the surgery, the flap procedure should help stop gum disease. The gums should become pink and healthy again.

When defendant Brevard extracted plaintiff's tooth, the bone was in poor condition because of a long term infection. It disintegrated while defendant Brevard was dislocating the tooth. This happens on upper molars fairly often. Further, at the time of the extraction, the tooth's roots extended into the sinus cavity. This left a large socket hole into the sinus

4

upon removal of the tooth.  This is not an uncommon occurrence.

After plaintiff's flap procedure, defendant Brevard packed the oral antial opening with Surgicel, which forms a good clot.  Surgicel is commonly used instead of sutures when there is a small opening, such as that caused by the extraction of a single tooth.  Defendant Brevard also packed the oral antial opening with Albogyl, which prevents infection and provides pain relief, and instructed plaintiff on how to manage the opening.

On December 26, 2005, defendant Ward saw plaintiff because he complained he was spitting up blood. Plaintiff told Health Services Unit staff he had undergone a tooth extraction on December 22, 2005.  Defendant Ward noted oozing blood in plaintiff's upper right molar area.  She gave plaintiff a moist gauze for gentle pressure and a light salt water swish.  She made a dentist appointment for plaintiff and gave him a one-day work restriction.

On December 27, 2005, defendant Helgerson saw plaintiff for persistent bleeding from the extraction site.  Defendant Helgerson noted ongoing, active bleeding.  He concluded plaintiff probably needed a suture and recommended sending plaintiff to the local emergency room dentist or to Dodge Correctional Institution if a dentist was unavailable at the emergency room.  Plaintiff refused to see defendant Brevard for treatment.  Heath Services Unit staff told plaintiff that this was not a good decision and that he needed to be seen by a dentist.

5

Later that day, plaintiff was bleeding from his mouth and he lost consciousness. Emergency Medical Services staff transported plaintiff to the Divine Savior Hospital emergency room.  Emergency room staff noted active bleeding from plaintiff's mouth. Plaintiff was given two milligrams of morphine for pain control, Albuterol/Atrovent for breathing, 1 milligram of Lorzepam, and 500 milligrams of Levaquin.  Emergency room staff packed the extraction site with Surgicel and Thrombin, and gave plaintiff tea bags on which to suck.  Dr. Thomas Jackson from Divine Savior Hospital called the Health Services Unit. He told staff that plaintiff's platelet count was down but that clotting appeared normal, and that plaintiff needed observation.  Plaintiff was admitted to Divine Savior Hospital around 2:45 p.m.

Plaintiff returned to Columbia Correctional Institution from Divine Savior Hospital at approximately 9:00 p.m.  Dr. Jackson reported that plaintiff's bleeding was controlled and asked that plaintiff be seen by a University of Wisconsin dentist before the weekend.  Health Services Unit staff noted that plaintiff's packing was intact with no sign of bleeding. Plaintiff was placed on 500 milligrams of Amoxicillin twice a day for seven days and 500 milligrams of Hydrocodone four times a day for four days.

On December 28, 2005, dental staff saw plaintiff to review the extraction site and set a consultation appointment with Dodge Correctional Institution oral surgeon, Dr. Brian Kelley.  Health Services Unit staff also saw plaintiff on December 28, 2005, and noted that

6

plaintiff's packing was in place with no drainage.  Plaintiff asked whether the packing should be changed.  Health Services Unit staff told him to leave it in place so the blood clot that had formed would not break.

Later on December 28, 2005, Health Services Unit staff checked the packing again. They noted that the packing was intact with no drainage, and placed plaintiff on a restriction for no heavy lifting.  Plaintiff reported minimal pain but complained of hunger.  He was placed on a soft diet restriction for two months.  On December 29, 2005, plaintiff was placed on a liquid diet for two weeks.

On January 6, 2006, Dr. Kelley saw plaintiff at Dodge Correctional Institution.  Dr. Kelley noted that plaintiff had an oral-antial communication, which is a hole between the mouth and sinus. The oral-antial communication was approximately one centimeter around, and the tissue buckle to the oral-antial communication was granulating.  There was no infection. X-rays were taken that showed the extracted tooth had been completely extracted. Surgery was done to slide the buccal flap to close the sinus opening.

At approximately 2:45 p.m. on January 6, 2006, plaintiff returned to Columbia Correctional Institution.  Health Services Unit staff noted that the packing was intact. Plaintiff was instructed not to use a straw.  At approximately 3:15 p.m., plaintiff was brought to Health Services Unit with uncontrollable nasal bleeding.  His vital signs were taken and he was referred to a doctor.

Plaintiff saw Dr. Suliene in the Health Services Unit for his severe nosebleed at approximately 3:45 p.m.. Plaintiff was coughing up clots of blood. Dr. Suliene noted that the packing on plaintiff's upper right tooth was not dislodged because of the nosebleed. Health Services Unit staff could not stop the bleeding, and plaintiff was transferred to the emergency room at Divine Savior Hospital.

At Divine Savior Hospital, emergency room staff gave plaintiff gauze packing and told him to keep it in place until bedtime, when he could carefully remove it. He was told to bite down on a fresh gauze pack if the bleeding returned.

Plaintiff returned to Columbia Correctional Institution around 6:35 p.m. Health Services Unit staff noted that his packing was in place, gave plaintiff gauze, and told him to bite down on the clean gauze if the bleeding recurred. Plaintiff was placed on one gram of Rocephine twice a day and 500 milligrams of Amoxicillin three times a day for seven days.

The next day, Health Services staff saw plaintiff around 8:33 a.m. Although the right side of his face was still swollen, Health Services Unit staff noted that plaintiff was not complaining much about pain. His gauze was in place and there was no bleeding noted. Health Services Unit staff ordered that plaintiff receive ice for three days to help reduce the swelling. Plaintiff also received an injection of Rocephin. Health Services Unit staff made a note to give plaintiff the injection on the other side the next day. Later that morning, plaintiff was given a dose of T-3 and told he could ask for a dose every 4-6 hours as needed

8

for pain.

On January 8, 2006, Defendant Helgerson met with plaintiff.  Defendant Helgerson noted that the facial swelling was the same as the day before and that the sutures were intact. Plaintiff said that ice and drinking water relieved his pain.  He received another Rocephin injection.  A Health Services Unit re-check was scheduled for January 11, 2006.

On January 10, 2006, Health Services Unit staff called defendant Brevard at New Lisbon Correctional Institution and told him that plaintiff was bleeding from the extraction site again.  Health Services Unit staff wanted to send plaintiff to see Dr. Kelley.  Defendant Brevard spoke to the Health Services Unit manager, who told defendant Brevard that plaintiff already had a follow-up appointment with Dr. Kelley scheduled for January 13, 2006.  They decided that plaintiff would see defendant Brevard if he had any problems after his appointment with Dr. Kelley.

On January 11, 2006, Health Services Unit received a call from housing unit staff, stating that Gonzales was complaining of bleeding from the extraction site.  House unit staff noted that Gonzales had spat small amounts of blood and that there was a small amount of bleeding at the extraction site.  Health Services Unit staff told plaintiff to put pressure on the extraction site with a piece of gauze.

Again on January 11, 2006, Health Services Unit staff saw plaintiff and noted a small amount of bleeding from the extraction site.  Plaintiff was told to continue holding the gauze

9

in place.  Defendant Ward went to plaintiff's cell to assess his status later in the day.

Plaintiff appeared to be sleeping.  Defendant Ward noted no bleeding.

On January 13, 2006, Dr. Kelley saw plaintiff again.  According to Dr. Kelley's notes,

plaintiff complained of continued nasal bleeding and said that the sutures from the January

6, 2006 procedure had come out, and his sinus flap was open.  Dr. Kelley examined him and

found the sutures and flap intact.  Plaintiff returned from Dodge Correctional Institution

later that day, and Health Services Unit staff noted that he had no complaints at that time.

On January 14, 2006, Health Services Unit staff saw plaintiff for complaints of "gobs

of blood in mouth."  Health Services Unit staff noted bleeding from the right upper molar

extraction site despite packing.  Plaintiff was sent to the Divine Savior Hospital Emergency

Room and returned later that day.  Plaintiff had instructions to keep tea bags in his mouth

with direct pressure to his bleeding gums for three to four hours.  Health Services Unit staff

issued more gauze to follow the tea bags.  Plaintiff was given repeat instructions and told to

alert security if the bleeding restarted.

Defendant Helgerson saw plaintiff for bleeding gums again on January 14, 2006.

Defendant Helgerson noted that plaintiff had been bleeding since 11:00 p.m. the previous

day despite gauze pressure.  Defendant Helgerson called Dr. Heinzl to the emergency room.

Plaintiff was sent to the emergency room where the bleeding stopped for approximately

fifteen minutes, then started again.

10

Plaintiff was sent to the University of Wisconsin Hospitals and Clinics.  Dr. Parquette found a small amount of red blood at the site, but no obvious bleeding and no purulent drainage.  Plaintiff was discharged in good condition.  He was directed to adhere to a full liquid diet for 24 hours, then a soft diet for three days.  He was to follow up with his dentist.  Plaintiff was advised to seek medical care if he developed any recurrent bleeding, difficulty breathing or swallowing or a fever.

On January 15, 2006, plaintiff returned from the University of Wisconsin emergency room.  During a follow-up check that day, defendant Helgerson noted that plaintiff had no more bleeding.  Plaintiff stated that the University of Wisconsin emergency room staff had put Epoxy in the tooth area.

On January 20, 2006, plaintiff saw Dr. Kelley at Dodge Correctional Institution for a follow-up.  Dr. Kelley noted that plaintiff was without complaint or pain.  No drainage or bleeding from the nose was reported.  Dr. Kelley found no infection, and the sutures had dissolved.  The tissue was well granulated.  The oral-antial communication was closed and everything was doing well.

Plaintiff returned from Dodge Correctional Institution that day.  Defendant Ward noted no bleeding.  Plaintiff stated that he was feeling fine and that his mouth was healing nicely.  Defendant Ward requested that plaintiff contact Health Services Unit if any problems occurred, and plaintiff indicated understanding.

11

Over the course of his dental treatment, plaintiff was sent frequently to Dodge Correctional Institution or the emergency room at Divine Savior Hospital because he refused to see defendant Brevard.  Plaintiff was consulted frequently regarding his treatment options and had the opportunity to have his concerns addressed by Health Services Unit staff or dental staff by submitting Health Services Unit requests through the prison communication system.

OPINION

Plaintiff's claim that defendants denied him adequate medical care arises under the Eighth Amendment, which prohibits cruel and unusual punishment. Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need."   Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snider, 444 F.3d 579, 584-85 (7th Cir. 2006).  A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer

12

v. Brennan, 511 U.S. 825 (1994).

"Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. Detella, 95 F.3d 586, 590-91 (7th Cir. 1996). Thus, neither incorrect diagnosis nor improper treatment resulting from negligence state an Eighth Amendment claim. Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997). Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).

Under these standards, therefore, plaintiff's claim has three elements:

(1) Did plaintiff need medical treatment?

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

Because plaintiff would have the burden to prove his case at trial, it is his burden at

the summary judgment stage to come forward with enough evidence on each of these elements to allow a reasonable jury to find in his favor.   Borello v. Allison,  446 F.3d 742, 748 (7th Cir. 2006); see also Celotex Corp. v. Catrett,  477 U.S. 317, 322-24 (1986).

For the purpose of this motion, defendants admit the first two elements of the claim: (1) plaintiff's pain and bleeding following his tooth extraction constituted a serious medical need; and (2) defendants were aware of plaintiff's medical need.  Thus, the crux of this case is whether defendants disregarded plaintiff's medical need by failing to provide reasonable medical treatment.

On this issue, plaintiff has offered no admissible evidence upon which a reasonable jury could find in his favor.  Moreover, even if plaintiff's unsupported testimony and unauthenticated exhibits were admissible, they would remain insufficient to show that defendants acted with deliberate indifference.

Plaintiff has raised several specific instances of defendants' conduct as the basis for his claim.  Namely, defendant asserts that: (1) defendant Brevard acted with deliberate indifference on December 22, 2005, when he failed to use sutures to close plaintiff's surgical wound; (2) defendant Ward acted with deliberate indifference on December 26, 2005, when she treated plaintiff's bleeding surgical wound with only gauze and a light salt water swish; and (3) defendant Helgerson acted with deliberate indifference by certain alleged actions that took place on the morning of December 27, 2005.

14

First, plaintiff's specific claim against defendant Brevard is that he acted with deliberate indifference on December 22, 2005, when he failed to use sutures to close plaintiff's surgical wound, knowing that plaintiff would suffer pain and bleeding as a result. There is no evidence, however, that defendant Brevard had knowledge that his actions would result in pain and bleeding. To the contrary, the undisputed facts show that defendant Brevard took steps to prevent such results. Although he did not stitch plaintiff's wound closed, he packed the oral antial opening with Surgicel to form a good clot. This procedure is a common alternative to sutures when a single tooth has been extracted. He also packed the opening with Albogyl to prevent infection and provide pain relief, and gave plaintiff instructions on how to care for the wound.

Although plaintiff may believe that sutures would have been a better treatment, the Constitution does not require prison officials to provide prisoners with the medical care they believe to be appropriate; it requires officials to rely on their medical judgment to provide prisoners with care that is reasonable in light of their knowledge of each prisoner's problems. E.g. Estelle, 429 U.S. at 107 (plaintiff's objection to prison physician's failure to order back X-ray failed to state claim under Eighth Amendment when prison officials provided minimal treatment). In fact, the decision "whether one course of treatment is preferable to another" is "beyond the [Eighth] Amendment's purview." Snipes, 95 F.3d at 591.

Thus, to succeed on his claim, plaintiff needed to offer more than his opinion that

15

defendant Brevard made the wrong decision about his treatment.  Plaintiff needed to show that defendant Brevard's decision to forego sutures was a "substantial departure from accepted professional judgment."  Plaintiff did not meet this standard.  Even if plaintiff had supported his claims with admissible evidence, these claims amount to no more than negligence.  Negligence may sometimes constitute medical malpractice, but mere negligence is not cruel and unusual punishment.  Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996).

As a second claim, plaintiff contends that defendant Ward acted with deliberate indifference on December 26, 2005, when she treated plaintiff's bleeding with gauze and a light salt water swish and arranged for him to see a dentist the next day.  Plaintiff argues that this treatment was not aggressive enough, and that defendant Ward should have arranged for plaintiff to be treated at an outside hospital immediately.

This claim fails for the same reasons detailed above.  The record contains no admissible evidence suggesting that defendant Ward's actions were a substantial departure from good practice, or even inappropriate under the circumstances.  Instead, defendant Ward merely exercised her professional judgment to fashion a treatment plan she deemed appropriate under the circumstances.  Even assuming Ward improperly treated plaintiff's medical needs, improper medical treatment does not constitute deliberate indifference.  Gutierrez, 111 F.3d at 1374.  Again, plaintiff has at best stated a claim for medical malpractice, but not a constitutional violation.  Id.

16

Third, in his final theory of liability, plaintiff contends that defendant Helgerson acted with deliberate indifference by allegedly taking certain actions on the morning of December 27, 2005.  This claim need not be explored in depth, because plaintiff has offered no authenticated, admissible evidence that the alleged actions occurred.  Although the record discloses several other occasions on which defendant Helgerson saw plaintiff for his dental condition, including a later interaction on December 27, 2005, plaintiff does not allege deliberate indifference with respect to these actions and has presented no evidence to that end.

As a final note, the Seventh Circuit has emphasized that courts must "examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs."  Id. at 1375.  When the totality of the medical record reflects ongoing attention to and treatment of an inmate's medical needs, occasional delays in treatment amounting to "an 'isolated occurrence' or an 'isolated exception' . . . to the [defendants'] overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference."  Id.

In this case, when considering the totality of plaintiff's medical care as reflected in the record, three facts stand out as particularly important. First, in addition to the three isolated instances of conduct upon which plaintiff bases his claims, plaintiff received extensive, ongoing treatment for his dental problem from defendants and other medical professionals,

17

totaling at least 30 medical consultations within 30 days.  Second, this ongoing treatment included the exact procedures plaintiff alleges defendants denied him: plaintiff's surgical wound was eventually closed with sutures and plaintiff met with a dentist within one day of seeing defendant Ward.  Third, as a result of this ongoing treatment, plaintiff's medical problems were ultimately resolved.  On these facts, even if I were to accept all of plaintiff's allegations as true, plaintiff has still shown no more than two instances of brief delay in the course of his medical treatment.  Taken in the context of a treatment record reflecting ongoing care, such delay does not rise to the level of an Eighth Amendment violation.  Id.


ORDER

IT IS ORDERED that motions for summary judgment of defendants Robert Brevard, Sue Ward and Steve Helgerson are GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.


Entered this 29th day of January, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge


18